And the first is numbers 20-3606,21-1040 and 1041. Behrens v. Arconic and Mr. Goodman, Mr. Murray, and Mr. Pappas. Mr. Goodman, whenever you're ready. Thank you, your honor. Am I permitted to take my mask off? Oh, yes, yes, you certainly may. And your honor, may I reserve three minutes for rebuttal, please? You sure can. Good morning. My name is Jeff Goodman and I'm from the law firm of Salts, Mongoloosy, and Bendesky. And today with my colleagues, I represent the plaintiffs in the underlying action, appellants in case number 20-3606. The plaintiffs in this case are the over 200 victims of the tragic Grenfell Tower fire. Included amongst the plaintiffs are the families of 69 of the people who lost their lives that night. Although this fire may have burned in London, the initial spark of this tragedy started right here in Pennsylvania. When a Pennsylvania company from Pennsylvania designed a product, trademarked the product, and made the deadly decisions to put that product on the marketplace and to send that product abroad. Mr. Goodman, this is obviously a form of non-convenience analysis by the district court, a very lengthy and thorough one. You raised some points with respect to the court's analysis, but you never really contend that the court balanced the factors in the wrong way. Do you? And isn't that the test? We do contend that, Your Honor. And the most fundamental error the court made, and you're correct, of course, this comes under the posture of it being a form non-convenience denial. However, this case at its root is about what product liability law is in Pennsylvania, because the fundamental error that the district court made in balancing the non-convenience factors was the error in determining that it would be appropriate in a product liability case, and a product liability case only, for the defendants to implead third parties who they claimed were negligent and to put on an entire negligence case against these third parties. It is that aspect of the court's analysis that completely altered the balance in the weighted factors. I'm sorry, I was just going to ask you, what was wrong about that analysis? Pennsylvania law has been clear for decades that in a product liability case, negligence principles have no place at all. The plaintiff's complaint in this matter, there was no claim for negligence. There was only a claim brought in strict product liability against the product manufacturers. The Third Circuit, back in 1992 in the Dillinger case, noted that the Pennsylvania Supreme Court, perhaps more than any other appellate court in the land, has been adamant about divorcing negligence principles from strict product liability cases. But isn't the misuse by third parties relevant in a strict liability case? I mean, we held that in Moyer versus United, I think it's relevant. Why do you say that that isn't so? The court in Moyer did hold that the misuse is relevant, but there is a massive gap between the misuse being evidence that can be put on and finding what the court found, which is that these third parties could be fundamentally impleaded in the case. Well, but later you could see contribution from them. Could you not? Which is a separate proceeding anyway. So when it comes to the form non-convenience analysis in this case, the district court said the problem is that they'd have to have a second contribution proceeding. Well, there would have to be a second contribution proceeding anyway. But is the form non-convenience really about the law of different jurisdictions and whether claims can be brought? It's really more about the convenience of the parties. And I don't know that this factor is controlling. Again, I don't know that you're really balancing. The entire reason that the convenience of the parties weighed in the defendant's favor in the district court's view is because the district court stated that the court disagreed with plaintiff's interpretation of Pennsylvania law on the significance of only bringing a product liability claim and found that the defendants, these UK based entities, should be permitted to be impleted into the matter for apportionment or for contribution. The Pennsylvania Supreme Court has cautioned time and time again that this theoretical dam exists between products cases and negligence cases. And we cannot allow these concepts of apportionment and fault to be used in products cases. The district court specifically tore down that dam and allowed the defendant's entire defense to be based on principles of apportionment and negligence. And that's what's the best case for the proposition that that this aspect is controlling and form nonconvenience. Well, the best case for the distinction between the fact that this evidence in a foreign convenience analysis that this aspect is controlling in the form nonconvenience analysis. I would point this court to Lacey too. I would point this court to Loney. I would point this court to Wendt for the propositions and for that matter to Piper for the propositions that the evidence that the court is to balance in assessing the convenience factors are the evidence that is ultimately to be used in the case. There is no situation in which under Pennsylvania law, these third parties could ever be impleted in the case. And because they couldn't be impleted in the case, the inconvenience and the harm that would bring them is not a factor that should weigh in any way, shape or form against the plaintiffs. Because the simple fact is under Pennsylvania law, per tincture, per every case before it, and per Roverano after it, these negligence principles of apportionment upon which the defendants have staked their claim in this case, have no bearing on the ultimate issue. Let's go back to the very first question that Judge Rendell asked. This is a balancing act, isn't it? Yes. And it's an abuse of discretion standard. Correct. So if it's an abuse of discretion standard with regard to something that's a balancing, there's a, in effect, a whole lot of deference that's given to the district judge that makes the decision as to which forum is the better. London, where the tragic fire occurred, or here where there's some claims made by the plaintiffs. And you mentioned Loney, Loney 2, I think we call it. And Merritt's discovery was much further down the road than where you are now. Right? Uh, first of all, I agree regarding what your honor stated about the balancing test. However, in Loney 2, the discovery was not much further along than it is right now. In this case, six months of actual Merritt's discovery. We had over a year of Merritt's discovery in this case, your honor. Now, yes, it was under the backdrop of forum nonconvenience. However, the defendant's fundamental objection to forum at the outset was, we the American companies didn't do anything. And therefore, the Merritt's discovery was interwoven because the key issue was to determine what they did do. Now, as far as this being about the balancing factors, three times in the district court's opinion, the court found that factors weighed heavily in the defendant's favor. Those factors were one, the inability to implead these third parties, because Pennsylvania law doesn't allow that in the first place. How many plaintiffs are there here altogether? The states, I guess. There are 69 estates and 174 survivors. And none are United States residents. Is that correct? Some of the beneficiaries of the estates are, but the underlying decision was not. But the beneficiaries of the states, only two out of 36, as I recall. I'm sorry. Only two out of 36 estates anyway have any beneficiaries in the United States. Is that right? I believe it is two of them. Yes, your honor. So, I mean, you look at this and then you look at the private interest factors that Judge Belson said weighed heavily for dismissal. Ease of access to sources of proof, the large number of party and non-party witnesses, the inability to implead UK-based third parties. And then he went further. Four private and public interest factors weighed for dismissal, though not quite as heavily. Practical problems coordinating the litigation, judicial economy, potential for conflicting rulings, UK substantial interest in the suit, and desire to avoid burdening Pennsylvania residents with jury duty on something that occurred across the pond. Yes, your honor. Each of those three private factors, the presence of evidence in the UK versus here. And let's not forget, this is a design defect product liability case. And the court conceded that the evidence of design, given that this is designed by a Pennsylvania company here, happened here. The evidence on the other side of the pond was the evidence of third parties and their alleged liability. That is the very evidence that Pennsylvania courts have said time and time again has no place in a product liability case. The decisive factor in this analysis is that plaintiffs only brought a products case. In every single case the defendants have cited and every single case the district court relied upon, it was negligence principles that implicated the need to get the evidence from abroad. That is completely absent here because this is only a products liability case. It does come back to the balancing of the factors. The three factors the court found to weigh heavily for the defendants favor all relied exclusively on the court's misinterpretation of Pennsylvania law in the court's belief that it would be proper to implete third parties and to defend the case against that. I'm misunderstanding here. The court determined that the fact that it could that Arcona could pursue third party claims against UK based parties in the same action in the UK, whereas it couldn't in the US, favored dismissal. Why isn't that justification for sending it to the UK where the whole action could be brought? Because the standard is not which place is better. The standard is litigating it here, oppressive and vexatious to the defendants. How can we say it's oppressive for it to be a second contribution proceeding in Pennsylvania? Well, that's the way Pennsylvania law operates every day. But if it's well, but you were complaining a few minutes ago that it had to bring another suit. It seems to me it's much less oppressive to send it to a place where everybody could be sued in one action. I guess I'm misunderstanding. Which is simply being less oppressive, being more convenient. That is not the standard. The standard is an oppressive and vexatious out of all proportion. Let's keep in mind proportionality. This is 69 wrongful death cases and hundreds of survivors. Proportionality. When you have a tragedy on this magnitude, you can't expect litigation to be wrapped up in one neat, tiny package. But none of these interested parties are in the United States. The most it seems to me it's more oppressive to them, you know, to to say, you know, keep it here as compared to send it to Great Britain, where they could be so many of them would have access to the trial and the proof. The most important part is our kind, the defendant that is based here, because they are the ones who engaged in the type of conduct that the district court went out of its way on multiple occasions to note the egregious, horrendous nature. The fact that it supported punitive damages and the fact and I see my time has expired. May I? You're on our time. Don't worry. Thank you. And the fact. Could you address condition 2H? Yes. Condition 2H from the district court's opinion speaks to the idea that the punitive damages component based upon the merits discovery and the facts that were revealed was so compelling that Pennsylvania's interest to protect consumers and punish those who place dangerous products in the stream of commerce was so weighty that the court constructed what the district were referred to as the novel approach of allowing the case to come back at the conclusion of UK litigation. Does UK law allow punitive damages? UK law does not allow punitive damages in product liability cases. So this is basically a return jurisdiction clause in the event that the UK court were to say, you know what, Arcona, they did horrible things. It's only right that we let the plaintiffs have at punitive damages. So I'm going to send the whole damage phase. I'm going to dismiss it. So the whole damage phase can be brought in the U.S. Isn't that what it basically says? Yes, it allowed for the return of the case for punitive damages because what the court found is that Pennsylvania's compelling interest related to punitive damages, which I'll note, and this was also discussed within the Piper analysis by the court, and the Piper court found that the deterrence effects of allowing a case to proceed here would be incremental at best because in Piper there was no punitive damages claim. It was just products versus negligence. The court found that that punitive component was so essential to the interest of Pennsylvania in light of the conduct of a Pennsylvania company that we needed to allow it to come back. And we believe this go beyond what a court who's deciding forum nonconvenience, you know, forum nonconvenience, I'm sending it to Great Britain. Doesn't it go beyond what a court's supposed to do to say, oh, guess what? Punitive damages come back here. What what's the precedent for for allowing that? The court acknowledged it was a novel approach. When it comes to punitive damages, the court assessed Piper and specifically stated that this punitive fact and its unavailability in Great Britain, if the court was allowed to consider that, the court may well deny defendant's motion. And the court wrongfully stated that it was not allowed to be considered. It is allowed to be considered. And in fact, when that evidence is considered, the court did it insofar as the adequacy of the UK as an alternate form. We're not contesting the adequacy of the UK. It instead is a public interest factor that is where it is to be considered. And in this case, that public interest factor, the court found so important that the court created this novel approach. Now, I submit the appropriate thing to do was instead of the novel approach to put that on the scales with the rest of this, and that if this court is so inclined to strike condition 2H, then this court would effectively be striking how the court balanced that critical factor. And the matter would need to go back to the district court. So the district court could now place that punitive damages, punishing a defendant, protecting consumer component back on the scales and reweigh it. And we submit it also needs to be reweighed in light of the fact that in a product liability only case, the fundamental issues of impleting third parties and blaming them have no place at all in the litigation. I mean, it sounds like 2H, which I haven't seen elsewhere, was essentially a gift to you. 2H was the district court's effort to keep in the case the compelling punitive damages component in the case, because I certainly wouldn't say it was a gift to the plaintiff. I can't imagine the defendants were arguing for it. They certainly were not, Your Honor, because its very purpose was to punish the defendants for their horrendous conduct. Is it not significant that all the major events in this entire case occurred in England? The construction, the fabrication of the material, the damage to the building, the fire, everything occurred in England. That would be important if this were a negligence case. The most important fact in this case is that Arconic, from Pennsylvania, decided to take a highly flammable cladding with a polyethylene core, place it in the stream of commerce, and then when they got warning after warning that this needs to be taken off the market, it's dangerous, it will kill people. Was that material fabricated in France? The specific product that went onto the tower was manufactured in France. This is not a manufacturing defect case. This is a design defect case. The decision to place it in the stream of commerce and the decision to keep it on the market after warning after warning of its danger came from Pennsylvania, as did the decision to eventually remove it from the market two weeks after it killed 72 people in this disaster. So although evidence, considerable evidence, about what happened certainly exists in the United Kingdom, this is a product liability case. In Pennsylvania, a product liability case is a binary analysis. You could have a product liability case in England as well. We could, Your Honor. English law provides for certain types of product liability. But basically, your argument is that you can't have punitive damages in England, but you can have them in Pennsylvania. You do not have punitive damages. You also do not have strict liability. And therefore, the objective and the interest of the Commonwealth and the United States in punishing defendants who behave this way is completely eviscerated. Liability is not an issue in these cases. They have the defendants have not stipulated liability. In fact, I expect you're going to hear a different picture as to liability. However, we believe the facts were so compelling that the district court even mentioned punitive damages would likely be appropriate in the ruling. That's the essence of your case. Punitive damages are not available in England, but they are in Pennsylvania. We believe they're appropriate. Therefore, the case should stay in Pennsylvania. And the fact that strict product liability, the focus is on the product and in the balancing factors of a form nonconvenience analysis when the entire case is about the product and the product is here, that tips the balance in favor of keeping it here or at a minimum. These scales are in equiposed and plaintiffs get the benefit. Tie goes to the plaintiffs on this. And if it's even a close call, the case should stay. How about the issue of where the negligence itself occurred that caused the resulted in the many deaths as a result of the fire? The negligence doesn't matter at all. Pennsylvania law has been crystal clear that in a product liability case, we do not corrupt the case with principles of negligence. We don't muddy the waters. That is the essence of everything the defendants have said. That is the essence of the flaw in the district court opinion is that it all gets back to the very point your honor just made that the negligence happened there. It's not a negligence case. It's a product's case. The product was designed here. I would agree with your honor's point regarding manufacturing in France had it been a manufacturing defect. It's a design defect where it was manufactured. It doesn't matter. All of the evidence of the design is here and that good then there and therefore it's proper for the case to stay here. If the case is tried in England, will a barrister do it or will you be together with a barrister bringing the litigation case or how does it work? I would love to put on the wig and argue myself in the UK courts. However, I am not licensed there. I can tell the court that I represent the victims in connection with the US litigation. There are barristers who represent them in the UK. If the matter were to go to trial, the extent to which I would be involved or not, I do not know the answer to. But I'm not licensed. Can you participate in discovery? I would imagine I can't as given that I'm not licensed there. But there's been nothing to progress to that point. So can it be said in terms of location that the vast majority of people that suffered as a result of the fire loss of life as well as injury occurred in England? Yes, your honor. However, the courts have been clear that in a forum nonconvenience analysis, the central focus is liability, not damage. And the reason why it's my burden to present my clients damages. If I can't do that, that only benefits the defendants. So that's our burden, which is why the courts have held time and time again. I'm not suggesting that's irrelevant. And I concede that most of the damages information would be over there for compensatory damages. All of the information for punitive damages, which is the heart of the damages in this case, is here. So when we come back to burden and you're saying a lot of things are your burden and we go back to the standard of review, which is arbitrary and capricious and your burden, you said ties go to the plaintiffs. Ties do not go to the plaintiffs on arbitrary and capricious. You could be 51 percent. You ain't going to get it there. You've got to get much further than that. What tells us, especially with this carve out in 2H, that somehow things were so arbitrary, so capricious that that presumption in favor of the district judge should be completely overcome? Because the district judge's entire opinion was contingent upon the misapplication of Pennsylvania law that these product liability only defendants should be permitted to defend the case by impleting allegedly negligent parties and blaming and out seeking an allocation as to those negligent parties. Whether that is or is not Pennsylvania law, that is not an abuse of discretion type standard. It simply is not Pennsylvania law. And because the court did apply Pennsylvania law in a wrong fashion there. That is why this court should reverse those findings and send it back so that the correct Pennsylvania law being that you can't implead negligent parties into a product only case and that you can't seek allocation from them in any way. Let's hear from Mr. Murray. Thank you very much. Your Honor, there was one point regarding Whirlpool. If I can briefly get you back on rebuttal on that, too. Thank you. I could probably read best that you deal with it on rebuttal since Mr. Pappas is going to deal with it. Of course. Thank you. Good morning, Your Honors, and may it please the court. My name is Jason Murray and I represent Arconic. This is a textbook case for nonconvenience dismissal and the district court clearly acted within its wide discretion in concluding that this case belongs in the UK. If you this case goes on in London, would you be able to join other individuals and entities that you claim might have that you may have contribution claims against? Yes, Your Honor. The district court considered affidavits from English law experts and concluded that in English court, all claims, including contribution and indemnity claims, as well as the plaintiff's claims, would be tried together in a single omnibus proceeding. And as to the point that Judge Rendell made earlier, the district court found that that would be more efficient, regardless of whether or not those claims would be litigated in a single proceeding or multiple proceedings in the United States under Pennsylvania law. There is no doubt that in an English court, all liability of all parties could be adjudicated together, and that would be a more efficient process, just as the Supreme Court noted in Piper. Explain to me what was the background to the was 2H negotiated or was that just sua sponte from the district court? Or what's the background to that? Your Honor, that was sua sponte. Prior to oral argument, the district court sent a list of questions to all of the parties. And one of those questions was whether or not this case should be bifurcated and damages should be retained in the United States while liability would be sent to the UK. Notably, all parties, including the plaintiffs, argued strenuously against bifurcation. The plaintiffs argued that bifurcation would be inappropriate because there's no authority for it and because it would be inconvenient. Plaintiffs would have to try their liability case effectively twice, once in England and again in the United States on punitive damages. The district court abandoned the concept of bifurcation, but then in its order, sua sponte imposed condition 2H instead. And we would submit, perhaps this is jumping ahead a bit, but we would submit that that was an abuse of discretion. The district court's opinion noted correctly that the Supreme Court's decision in Piper precludes consideration of differences in damages or liability standards in determining the form nonconvenience analysis, but then proceeded to reincorporate those same concerns in imposing a limitation on the form nonconvenience dismissal, inviting the case back to the United States for both compensatory and punitive damages. The form nonconvenience issue should never consider the question of damages? No, no, Your Honor. In Piper, the Supreme Court said that the damages regime in the foreign forum may be a relevant consideration if the damages or remedy available in the foreign forum is so clearly inadequate as to amount to no remedy at all. But the district court said that's not true in England. They have an adequate remedy in England. And under Piper, that should have been the end of the consideration of the differences in damages regime. Well, but what if the court, I mean, it's really a return jurisdiction provision. It's not a bifurcation. It's saying, Judge Bales is saying, well, what if we go over to Great Britain and the court says, you know, it's really horrible, we think punitive damages probably are warranted here. But, you know, we're not going to deny them the right to do it. So we're going to dismiss the case so that the damages case can proceed in the U.S. And then it comes back to the U.S. And the defendants say, well, too bad, statute of limitations. You know, you can't sue us here. Then there'd be no damages phase. So it's isn't it just limited to that remote possibility that the British court says, you know, we really think punitive damages are warranted, but we don't have that. So we're going to let the plaintiffs have their bite at the apple. We're going to dismiss the case and they can pursue it in the U.S. Wasn't he just doing a return jurisdiction provision that preserved the right to pursue damages if the court did what's probably very unlikely? And you definitely would argue against it, I'm sure, in Great Britain if it were to come before the court. But wasn't it really kind of, you know, the court was exercising kind of, well, what if, and providing a remedy? Is that so wrong? Your Honor, in a typical return jurisdiction provision, the underlying condition is geared towards addressing the adequacy or convenience of the foreign forum. So it's questions such as, you know, the foreign court denies hearing the case on jurisdictional grounds or on statute of limitations grounds or other threshold issues that deny an audience to the case on the merits. But impose the right to then have the jurisdiction here if that should happen, right? Yes, Your Honor. And this case is fundamentally different than that, because in this case, the district court invited the case to be brought back here, not based on any concern grounded in foreign nonconvenience, but rather based upon what I take to be, in essence, a substantive disagreement with English law, namely the typical unavailability of punitive damages in the foreign forum. But where's the invitation? I don't I don't see an invitation in this provision. Well, the district court laid out a series of conditions and effectively prejudged the propriety of reinstating the case. It says that the U.K. court determines that Pennsylvania law applies to damages or any other state in the United States and that one or both defendants may be liable for punitive damages, but decides to grant dismissal of the damages phase without prejudice in the U.K. for determination in the U.S. Plaintiffs may reinstate this action in this court. That's that's correct, Your Honor. And to Judge Rendell's point, we believe those conditions are highly unlikely to ever be met. We think it would be almost unthinkable for an English court to determine both that Pennsylvania law applied here and that it would be appropriate to send the case back. Well, you're going to think it's inappropriate to even consider that punitive damages might be warranted. But a British court faced with all these plaintiffs and these horrific situation might view it differently. Understandable, and there's no reason to believe that an English court could not in the unlikely event that Pennsylvania law were to apply in an English proceeding, which is a requirement of Condition 2H in any event. There's no reason to believe that the English court couldn't simply apply Pennsylvania law, including Pennsylvania damages law on its own. Well, it might. But if it doesn't and does this unusual move of saying, oh, well, we're not going to discuss damages here, go to the U.S., then at least there's a remedy for the plaintiffs. There is. But the problem is the district court prejudged the propriety of accepting the case back in the United States on a series of facts that have not yet happened. And that's part of the issue here. Barely did you make the argument that 2H is not right for a decision at this point. Oh, I think there is a question as to whether or not Condition 2H is right, in part because we don't know what the facts on the ground would be years later, if and when the condition is ever triggered. That being said, we do think it is right for decision now because it affects our rights today. It's baked into the district court's order. It makes a determination now that reinstatement would be appropriate on a series of hypothetical future facts. And it would be appropriate for this court to decide that now. But in addition to the problems we identified in our brief with the condition related to concerns underlying Piper, there's another fundamental problem with the condition as well, which is its inconvenience. The plaintiffs themselves argued below that this condition would be incredibly inconvenient because, among other things, it would force them to try liability twice to put on again all of their liability evidence to show punitive damages in the U.S. But that is not the only inconvenience. The district court here found that there are hundreds of witnesses to damages in the U.K., including all of the plaintiffs, their medical providers, and other individuals who would provide evidence of damages. And keep in mind that Condition 2H is not limited to punitive damages. It also encompasses a trial in the United States on compensatory damages. By the district court's own findings, a trial on damages in the United States, including compensatory damages, would be highly inconvenient. And the condition re-raises the same problems of impleader that motivated the district court to dismiss the case in the first place. Why would that trial be inconvenient? The trial on damages in the U.S.? The witnesses that would be required to litigate damages are almost exclusively in the United States, in the United Kingdom, including all the plaintiffs, their medical providers, their employers, other individuals who might have evidence related to damages. Mr. Goodman argued that damages don't weigh heavily in the form of nonconvenience analysis, the location of damages evidence. There is no federal FNC case that suggests as much. And the Supreme Court in Piper specifically cited damages evidence located in the U.K. as an important factor justifying FNC dismissal. If I may go back for a moment to a point Mr. Goodman made on plaintiff's appeal, Mr. Goodman argued that all the evidence related to this case is in the United States. I don't believe that's true even for plaintiff's burden of proof and plaintiff's undoubtedly not true when it comes to the defendant's defenses, which the Supreme Court in Piper said also must be considered in the FNC analysis. The district court clearly did not abuse its discretion in following this court's controlling decision in Moyer, which held that evidence of misuse of a product is generally admissible to defeat causation in a strict liability design defect case. Plaintiffs have essentially no answer to Moyer or our critical need for evidence of third party misuse of our product as a critical defense here. And it's important to note that the district court relied not only on evidence of third party witnesses located in the U.K., but also critical physical evidence related to the fire. That evidence is in the custody of the London Metropolitan Police. The district court made a factual finding based on expert evidence that that physical evidence would be critical to the defense and may be inaccessible for purposes of U.S. litigation. That is a factual finding that it was not clear error. Plaintiffs have virtually no response to and that clearly supports the district court's FNC dismissal. On the subject of impleting third parties that are responsible for the fire, once again, the Supreme Court in Piper expressly noted the inability to implead those parties in Pennsylvania as a fact supporting the district court's FNC dismissal. The district court did not abuse its discretion by following the well-trod path laid out in Piper. In fact, as the district court said, there was only one meaningful difference for FNC purposes between this case and Piper. In Piper, the allegedly defective products were manufactured and sold right here in the United States, including in Pennsylvania. In this case, by contrast, the allegedly defective products were manufactured by non-party subsidiaries and corporate affiliates in Europe and were sold in the U.K. The district court found that that difference renders the American interest in litigating this case even less than the American interest that already did not suffice in Piper. Your adversary's significant point is that punitive damages should be addressed in Why is he wrong? Your Honor, the Supreme Court in Piper once again expressly held that differences in substantive law, including differences in remedies, ordinarily ought not to be entitled to substantial weight in the forum on convenience analysis. A number of this court's sister circuits have expressly applied that holding to punitive damages and have found that the unavailability of punitive damages in a foreign forum does not weigh against FNC dismissal, which has to be right because the vast majority of other countries, unlike the United States, do not allow punitive damages or allow them only rarely. In that respect, the U.S. is an outlier. I see that my time is up. If there are any further questions, I have no further questions. Thank you, Your Honors. You're here on behalf of Whirlpool, is that correct? That's correct. Good morning, Your Honor. I don't know your name, I'm sorry. Matthew Pepez from law firm Jones Day on behalf of Whirlpool. I'd first like to briefly address forum nonconvenience from Whirlpool's perspective. Can I ask one question up front? You have a conditional appeal. Yes, Your Honor. If we were to affirm the district court, would we address the issue decided about personal jurisdiction with respect to Whirlpool? No, Your Honor. If you affirm the district court's opinion and the dismissal on forum nonconvenience, then our conditional cross appeal does not become ripe. And we wouldn't have to wait on the Supreme Court's decision in Mallory, then? Correct. If you were to reach it, again, if you affirm on FNC grounds, then you don't reach our conditional cross appeal. If you do, if you were to reverse on FNC grounds, then at that point, you'd have to address our conditional cross appeal. But in that situation, given that the Supreme Court has granted cert in the Mallory case, Whirlpool submits that the proper and most efficient thing to do would be await the Supreme Court's decision in Mallory. Theoretically speaking, if, however, we decided that 2H either wasn't ripe or should not have been in the order, how would that affect Whirlpool? If it decides that it should not have been in the order and otherwise affirms in the conditional cross appeal, again, you don't need to decide it. So let me now turn briefly, and unless you have any more questions on personal jurisdiction, I'll turn briefly to forum nonconvenience from Whirlpool's perspective. We heard a lot from Mr. Goodman about Pennsylvania law and one discreet aspect of it. From Whirlpool's perspective, it's helpful to review what Judge Baleson found when he zoomed out and summed it all up. And to Judge Rendell's point, I think in her first question, he expressly found that the defendants had established that litigating in the UK will best serve the convenience of the parties and the ends of justice. That is the fundamental finding. And that fundamental finding is something that the plaintiffs just do not challenge in a comprehensive way. And briefly stepping back and looking at and reviewing this court's three-part test for FNC shows plainly why that finding was within Judge Baleson's discretion. Step one of the three-part test, do the English courts provide an adequate alternative forum? Yes, of course. And Mr. Goodman conceded today that the plaintiffs do not challenge that. Step two, did Judge Baleson have discretion to give the plaintiff's forum choice only moderate deferences? Again, yes. Now, plaintiffs appeal that level of deference and they do it based on the argument that under Loney 2, this case was too far along to grant FNC. But curiously, as you heard today, the entire focus of plaintiffs' presentation has been on Arconic. They concede in their opening brief that only, quote, minimal discovery took place as to Whirlpool. So wherever this case is litigated, the merits case as to Whirlpool will be starting from scratch. That undisputed fact completely distinguishes this case from Loney 2 and thereby undermines the entire premise for the plaintiff's argument that their forum choice deserved more deference. Finally, the private and public interest factors of balance. I will not, of course, repeat everything that's been said already. Instead, I'll simply point out that as to Whirlpool, Judge Baleson found that, quote, evidence as to Whirlpool activities in the United States is completely lacking. And why? Because this fridge was never designed in the United States, never manufactured in the United States, never marketed in the United States, never sold in the United States. All of that occurred overseas. That is the fundamental point as to Whirlpool, and the plaintiffs do not challenge that finding on appeal. Finally, as to the public factors, Judge Baleson. I think we've dealt with this. Okay. Thank you, Your Honors. Thank you. Mr. Goodman. First of all, regarding. We gave you well over 20 minutes, so we're going to probably hold you to your three minutes of what you want to address Whirlpool. Yes, Your Honors. First of all, we believe the appropriate course in Whirlpool is to wait until the U.S. Supreme Court rules in Mallory. That should pretty much dictate the outcome on the jurisdictional issue. Mr. Pepez stated at the end that when zooming out, the district court found that the best way to serve the administration of justice was to allow this case to proceed in the UK. That is. I'd like to get that on how Mallory comes out. Do I have that? I will decline to do so, Your Honor. The best way to serve the administration of justice is not the standard. It said convenience. He said convenience of the parties, that that's what Judge Bailson found, which again is not the standard. The standard is not which place is best. It is plaintiff's chosen form, oppressive and vexatious to the defendants. The only argument that Mr. Arconic used to implede third parties is he said it was not an abuse of discretion because Piper did it. Piper was a negligence case. It's entirely proper in a negligence case. Arconic made the same mistake the district court made in completely ignoring the fact that this is different because this is only a product liability case and there is no right whatsoever, no ability to implede a negligent party. Counsel mentioned... Why couldn't the court say, you know, if we do it here in the United States, it's going to be, you know, multiple trials because maybe strict liability, you know, although I believe Moyer is controlling, but although strict liability, we're going to have to try it against them. Then they're going to have to bring contribution claims. Why don't we put it to a place where everything could be tried at once? What's wrong with that decision by the district court? Then we could say that for every case in Pennsylvania because it's, we have an extra step in our process. Let's go try to send cases to forums that don't. Defendant could come in and say in New Jersey, you don't have to bifurcate it like that. Transfer the case over there. The standard is oppressive. It can't be oppressive to do it the way it's done every day in Pennsylvania. I don't dispute your honor's reliance on Moyer. Moyer spoke about the misuse of a product by plaintiffs and plaintiffs employer to defend causation. There is no causation defense here. In a product liability case only the issue is, was their product a cause? Whirlpool isn't claiming there was a different spark that started this fire. That evidence isn't there. What's Arcona claiming? They're claiming that other parties shouldn't have put our cladding on this building, or they should have selected different cladding. How about the intervening cause of a third party? Those are all arguments for allocation and apportionment. They're arguing because the fire department didn't respond quickly enough. They bear responsibility because the contractor put it on or didn't run tests. They bear responsibility. None of that does anything to change the fundamental aspect that their product was a cause of this tragedy. And as a cause that is enough, because this is only a product liability case, the district court fundamentally erred and abused its discretion by weighing at least three separate factors heavily to the defendants based on district court's view that they should be able to put on evidence that is blatantly not allowed in a Pennsylvania product liability case. Any significance to the fact that the significant witnesses in the case to the fire and the deaths and all that occurred are in England? The expert witnesses in England? I disagree on the expert witnesses. The expert witnesses related to at least the liability issues. The only ones that have been identified are U.S.-based witnesses. Certainly some damages experts would be based in the U.K. However, this is a product liability case. How the fire spread that night isn't going to be a central issue. The issue is, is this product effective? What notice did they have of the defect? What did they do when they had that notice? That the issue to take the evidence to the other side of the ocean is based upon the fact that this is a negligence case. Of every case cited, and as far as I can tell, plaintiffs are novel in this approach because we only brought a product liability case. And the reason we did so strategically when we filed was because of this very issue. Pennsylvania was different. Any significance that the product's failure was in fact in England? The product's failure was not in England. The product's failure was as soon as it was placed in the stream of commerce with the design of the product. The design and the flawed design of this product is that the polyethylene core of it is essentially, makes it a hundred times more flammable than if it was coated in gasoline. And so it wasn't a failure that it got lit. And you don't think the British courts are capable of deciding that issue? Whether the British courts are capable of deciding that issue or not is not the point. The point is. The point, the point is what's more convenient for the parties in this litigation? Where should, what forum should it be in, correct? Respectfully, more convenient is not the standard. Oppressive and vexatious to the defendant is the standard. It is not oppressive and vexatious for a Pennsylvania company to defend their Pennsylvania decisions about their Pennsylvania product in Pennsylvania. That is why the standard, it intentionally weighs towards the plaintiffs even when they are foreign citizens. So we end up where we started. This is a balancing presumption is given to the district court because it's an arbitrary and capricious analysis and you have a pretty high hill to climb. I change that. I agree with that. However, the legal issue of whether these third parties could be implemented and whether in the defense you can basically put on allocation of third parties. That is a legal issue that the court was fundamentally wrong about. Once that issue is taken off the scales, the balance tips decidedly in plaintiff's favor. Thank you very much. Thank you. Thank you to all counsel for well presented arguments and we'll take the matter under advisement and we'll call our second case.